IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–02043–PAB–MDB

DELBERT SGAGGIO,

    Plaintiff,

v.

MARIO DIAZ, in his personal and professional capacity, and
THE CITY OF PUEBLO, a municipal corporation,

    Defendants.

## ORDER

This matter is before the Court on the "Defendants' Motion for Stay of Discovery Pending Ruling on Motion to Dismiss." (["Motion"], Doc. No. 14.) Plaintiff has responded in opposition to the Motion, and Defendants have replied. (["Response"], Doc. No. 21; ["Reply"], Doc. No. 22.) For the following reasons, the Motion is **GRANTED**.

### SUMMARY FOR *PRO SE* PLAINTIFF

The Court is granting the Defendants' request to stay discovery in this matter until after resolution of the pending motion to dismiss. The Court has made this decision after applying a liberal standard to your filings and after applying the factors set forth in the case, *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-WYD, 2006 WL 8949955, at *2 (D. Colo. Mar. 30, 2006). The *String Cheese* factors help the Court consider all the relevant circumstances and interests at issue in this case. Although the Court will not grant a stay simply because a

defendant has filed a motion to dismiss or made qualified immunity arguments, the Court finds that in this case, and under these circumstances, a temporary stay is appropriate. The stay will be lifted as soon as the motion to dismiss is resolved. This is only a summary of the Court's decision. The Court's full decision is set forth below.

## STATEMENT OF THE CASE

Plaintiff Delbert Elmer Sgaggio[1] brings this action against Defendants Mario Diaz and the City of Pueblo, alleging First Amendment violations in connection with an incident that occurred in August 2020. (Doc. No. 1.) According to the Complaint, Mr. Sgaggio was with his father-in-law, Daniel Aguilera, when Mr. Aguilera received a call from his wife, Crystal Casias, telling Mr. Aguilera that the Pueblo Police Department was in Mr. Aguilera's backyard. (Doc. No. 1 at 2-4.) According to Mr. Sgaggio, Officer Mario Diaz "[gave] Crystal 24 hours to move marijuana plants that [were] growing in the back yard." (*Id.* at 4.) Mr. Sgaggio alleges that Crystal had her phone on speaker and that the telephonic communications between Mr. Sgaggio and Mr. Diaz were captured "on the Code Enforcement officers Body Cam." (*Id.*) Mr. Sgaggio alleges the following colloquy:

> The first question I asked detective Mario Diaz is 'What is the infraction?'
>
> Mario Diaz refuses to answer the question. Mario Diaz states the following 'I've already discussed everything with Mrs. Casias.'
>
> Crystal then speaks out 'Its [sic] because they are not in an enclosed space.'
>
> You can then here [sic] me on speaker phone 'They are not in an enclosed space?'

---

[1] Mindful of Plaintiff's *pro se* status, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

2

Mario Diaz 'That is correct sir'

I reply to Defendant Diaz 'well there's a lock on the gate, and you know it's protected by the Colorado Constitution right?'

Mario Diaz 'it is not sir. We are given [sic] [M]iss Casias an opportunity, to correct the issue if not, we will come back and issue some tickets. And we will destroy the plants. So I'm thinking we are being pretty fair as to not taking the plants right now. And not issuing a citation. So we will be back about this time tomorrow. And if they're not gone. And you haven't complied, and then we, can moved some other way.'

I then ask Mario Diaz 'OK did you go to her door and knock on it first? Or did you go and step on the property and look in the back?'

Mario Diaz refuses to answer the question. He says 'have a nice day' and then gives the phone back to Crystal. At this point you can tell on the body Cam video that Mario Diaz is pissed off. Crystal continues to converse with the, [sic] three Pueblo government officials in her backyard. You can then hear me on the speaker again loudly stating the following 'Tell them you need to see the search warrant! Do they have a search warrant?'

Crystal 'Do you have a search warrant?'

Mario Diaz 'No ma'am. You voluntarily took us back here, so we were able to examine your grow. If I needed a search warrant for that, I could have got one. Yes absolutely. And I would've took all your plants, and giving you a citation. We are not doing that.'

I loudly interrupt on speaker. 'you don't have the right to take everyone's plants just because you have a search warrant! Are you with the county or are you with the city?'

Crystal then Ask [sic] Defendant Diaz. OK I just want to know, is there any way I can file an appeal against this?'

Mario Diaz replies. 'What appeal? Ma'am it's city ordinance.'

I once again interject with my big mouth. 'It doesn't matter it's due process. Do you understand due process Sir? Do you understand the 5th and the 14th Amendment Sir? That's what I'm asking. We can go to federal court real quick right here.'

> The body camera video then shows Mario Diaz hanging up the phone.
>
> Crystal 'Can I have my phone back'
>
> Mario Diaz gives the phone back, in a very cocky fashion. 'If you have any more questions let us know. I'm not here to argue with your boyfriend over the phone. OK Tomorrow ma'am about this time. You got the time. Alright tomorrow 3 o clock or Mrs. Casias will be receiving a citation.
>
> Crystal can be heard being distraught in the background.

(*Id.* at 4-8.) Mr. Sgaggio includes a picture of Mr. Diaz and claims there is "a big problem in America today. The Dipshit pictured above, is that problem." (*Id.* at 8.) Mr. Sgaggio goes on to make various allegations, including that "the plants were protected under the Colorado constitution," that there were due process violations against Mr. Aguilera and his wife, and that the landlord—who was sued by Mr. Aguilera in small claims court—was the one to call the police, therefore "this was a retaliation." (*Id.* at 8-9.) Mr. Sgaggio then alleges what amounts to the crux of his complaint against Defendants:

> My back and forth with defendant Mario Diaz is a matter of public concern. We're dealing with a public servant who is lying out of his ass. He has absolutely zero clue as to what, due process is, yet he holds the rank of detective. This is utterly disgusting. The video shows a ridiculous abuse of power, and no respect for the Colorado Constitution. Defendant Diaz does not agree with my viewpoint, he stopped my speech by hanging up the phone. This is stopping my message, my vibrations, and my sincerely held spiritual beliefs of defending members of my flock. Crystal is also a member of our Indigenous house of worship.

(*Id.* at 9.) Mr. Sgaggio alleges that the "broadcasting of [his] speech from Crystal[']s phone was speech regarding: Due Process, the 5th and 14th Amendment and the Colorado Constitution. This is protected speech under the First Amendment." (*Id.* at 11-12.) He claims that "Defendant Diaz responded to my First Amendment activity with retaliation, by hanging up Crystal[']s phone and stopping my constitutionally protected activity…. Defendant Diaz's retaliatory

4

actions and hanging up crystals [sic] phone, was meant to punish me for exercising my First Amendment." (*Id.* at 13-14.)

Mr. Sgaggio brings three claims pursuant to 42 U.S.C. § 1983: one for the alleged violation of the freedom of speech guarantee, one for alleged retaliation in connection with the exercise of first amendment rights, and one for the violation of the free exercise of religion guarantee. (*See id.* at 11-17.) Mr. Sgaggio also brings a claim under C.R.S. § 13-21-131, with authorizes a civil action for the deprivation of constitutional rights. (*Id.*)

Defendants have moved to dismiss the Complaint. (Doc. No. 12.) That motion has been referred to the undersigned for a report and recommendation. (Doc. No. 13.) Although the Court does not address the merits of Defendants' motion to dismiss in this Order, it preliminarily considers the dismissal arguments in connection with determining whether a stay pending resolution of the motion to dismiss is warranted.

In their motion to dismiss, Defendants argue that hanging up the phone does not amount to a law that abridges freedom of speech, nor does it amount to the type of conduct that is considered retaliatory, such as arresting, fining, or harassing an individual based on what they say. (Doc. No. 12 at 5-6.) Defendants argue, therefore, that "Plaintiff has failed to plausibly allege a violation of free speech under the First Amendment and, thus, this claim should be dismissed." (*Id.* at 6.) Defendants also argue that Mr. Sgaggio has not set forth a valid claim for retaliation because he does not plausibly allege "that Defendant Diaz's action caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in protected activity, nor [does he allege] that Defendant Diaz's

5

actions were substantially motivated as a response to Plaintiff's right to free speech." (*Id.* at 9.) According to Defendants, the free exercise claim also fails because even if Mr. Sgaggio could prove that defending his father-in-law was part of Mr. Sgaggio's sincerely held religious beliefs, the act of hanging up the phone does not constitute an impermissible burden on Mr. Sgaggio's religious freedoms. (*Id.* at 11-12.) Finally, Defendants argue that because there is no underlying constitutional violation, the C.R.S. § 13-21-131 claim must also be dismissed, the *Monell* claim against the City fails, and Defendant Diaz is entitled to qualified immunity. (*Id.* at 12-15.)

In response to Defendants' motion to dismiss, Mr. Sgaggio cites various cases illustrating the suppression of free speech. (Doc. No. 20 at 3-5.) Mr. Sgaggio also makes several arguments in support of his claims, insisting that his speech was constitutionally protected, that hanging up the phone stopped his speech, and that he suffered injury as a result. He explains that the act of hanging up the phone "stopp[ed] my message, my vibrations, and my sincerely held spiritual beliefs of defending members of my flock." (*Id.* at 9.) He also explains:

> My speech are the vibrations that are sent into the Universe. Just as a Christian or Muslim may choose to pray. All vibrations, I send into the universe our sincerely held spiritual activities protected by the 1st amendment. As I am communicating with Spirit in the traditional and historical context related to my spiritual beliefs. This is one reason we never speak bad about ourselves, for everything we say will happen.

(*Id.* at 10.)

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26(c), however, permits a court to "make an order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Further, "[t]he power to stay proceedings is incidental to the power inherent in every court

6

to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

In this Court, as in this District, a stay of discovery is generally disfavored. *See, e.g.*, *LS3, Inc. v. Cherokee Fed. Sols., LLC*, No. 1:20-cv-03555-PAB-NYW, 2021 WL 4947284, at *2 (D. Colo. Aug. 26, 2021); *Gold, Inc. v. H.I.S. Juveniles, Inc.*, No. 14-cv-02298-RM-KMT, 2015 WL 1650900, at *1 (D. Colo. April 8, 2015); *Rocha v. CCF Admin.*, No. 09-cv-01432-CMA-MEH, 2010 WL 291966, at *1 (D. Colo. Jan. 20, 2010). Nevertheless, the decision of whether to stay discovery rests firmly within the sound discretion of the Court. *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (quoting *Landis*, 299 U.S. at 254).

In ruling on a motion to stay discovery, five factors are generally considered: "(1) [the] plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to [the] plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-WYD, 2006 WL 8949955, at *2 (D. Colo. Mar. 30, 2006); *see United Steelworkers*, 322 F.3d at 1227. Further, "a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved." 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2040, at 198 (3d ed. 2010); *see, e.g.*, *Burkitt v. Pomeroy*, No. 15-cv-02386-MSK-KLM, 2016 WL 696107, at *3 (D. Colo. Feb. 22, 2016) (observing that a stay may be appropriate pending the resolution of a motion to dismiss impacting immunity or jurisdictional issues).

## ANALYSIS

### I.   Prejudice to Plaintiff

Mr. Sgaggio asks the Court not to stay discovery, but he does not articulate any prejudice he might suffer in the event of a stay.[2] (*See* Doc. No. 21.) *See Barrington v. United Airlines, Inc.*, 565 F. Supp. 3d 1213, 1217 (D. Colo. 2021) (finding the first factor to be neutral, where the plaintiff identified no specific prejudice arising from the imposition of a stay). Regardless, plaintiffs always possess a general interest in proceeding to the merits of their case, and because Mr. Sgaggio proceeds *pro se*, the Court will read his response liberally and will not assume that he concedes the prejudice point. Although the Court does not see how a temporary stay would meaningfully prejudice Mr. Sgaggio, given that the incident occurred approximately two years before he filed his Complaint and given that the claim is based on the seconds during which

---

[2] Mr. Sgaggio attaches an order issued by the Honorable Nina Y. Wang denying a stay of discovery in a different case. (["Order"] Doc. No. 21-1.) Mr. Sgaggio states that he agrees "with the arguments in this order[.]" (Doc. No. 21 at 2.) The Court has reviewed the Order, which was issued in a putative class action brought against officers from the Aurora Police Department and the Jefferson County Sherriff's Office, alleging violations of plaintiffs' first amendment rights "during a violin vigil [p]laintiffs organized and/or attended in Elijah McClain's memory on June 27, 2020 in Aurora, Colorado." (Doc. No. 21-1 at 3.) In her Order, Judge Wang finds that the invocation of qualified immunity did not in and of itself warrant a stay. (*Id.* at 12.) The Court agrees with Judge Wang on that point. A stay is not automatically warranted every time a defendant raises qualified immunity. Judge Wang then went on to apply the *String Cheese* factors and determined that in that particular case, under those particular circumstances, a stay was appropriate. This Court will also apply the *String Cheese* factors, and although it is guided by Judge Wang's Order and other orders applying the *String Cheese* factors, it notes that courts are afforded broad discretion on the question of whether to issue a stay. Because every case is different, the outcome in one case will not necessarily determine the outcome in another case, even if the claims are similar or even identical.

Defendant Diaz hung up the phone, the Court draws several inferences in Mr. Sgaggio's favor and weighs this factor against the imposition of a stay.

## II.     Burden to Defendants

In support of a stay, Defendants argue that the motion to dismiss is based on "purely legal arguments," and that discovery in this case would not be insubstantial. (Doc. No. 14 at 4-5.) They also argue that "[e]ven if Defendants' Motion to Dismiss is not entirely successful, it is likely that at least *some* Defendants and *some* claims will be resolved through the motion, leaving the parties and the Court in a much better position to tailor discovery to address any remaining claims." (*Id.* at 6.) Moreover, they argue that "Defendant Diaz will unnecessarily suffer without a stay because qualified immunity is intended to protect litigants from the burden of discovery." (*Id.*)

A stay is not warranted merely by virtue of a defendant's filing a motion to dismiss. *See PopSockets LLC v. Online King LLC*, No. 19-cv-01277-CMA-NYW, 2019 WL 5101399, at *3 (D. Colo. Oct. 11, 2019). Moreover, the Court is not obligated to make a preliminary determination on such a motion. *Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2017 WL 3283090, at *3 (D. Colo. Aug. 2, 2017) ("[N]o element of the *String Cheese* factors requires that this court make a preliminary determination as to the likelihood of success of either the dispositive motion or the ultimate merits of the case."). That said, the Court finds the second factor does support the imposition of a brief stay pending resolution of Defendants' motion to dismiss, because of the apparent strength of the pending motion (which the Court only preliminarily assesses) and the fact that Defendants' motion could be entirely dispositive. *See Morrill v. Stefani*, No. 17-cv-00123-WJM-KMT, 2017 WL 1134767, at *2 (D. Colo. Mar. 13,

2017) (finding plaintiff's interest in proceeding expeditiously with the case was overcome by the potential burden to the defendants "if they were forced to proceed with discovery only to have the case dismissed for lack of jurisdiction"); *see also String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PAB, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) ("[S]ubjecting a party to discovery when a motion to dismiss for lack of personal jurisdiction is pending may subject him to undue burden or expense, particularly if the motion to dismiss is later granted."). Under these circumstances, requiring the parties to submit to full discovery at this time would subject Defendants to undue burden and expense if this case is ultimately dismissed. To be sure, the Court is not saying that all dismissal arguments automatically warrant a stay, but in this case, under these circumstances, and in light of the arguments made in the pending motion to dismiss, the Court finds the burden on Defendants could be substantial and undue, in the absence of a stay. Accordingly, the second factor weighs in favor of a stay.

### III. Remaining Factors

Looking to the remaining *String Cheese* factors, the third factor (court convenience) and the fifth factor (public interest) also weigh in favor of a stay. Indeed, judicial economy and resources would be wasted if the Court allowed discovery to proceed, only to later determine that this case must be dismissed in its entirety. *See Skyline Potato Co. v. Rogers Bros. Farms, Inc.*, No. 10-cv-02353-WJM-KLM, 2011 WL 587962, at *2 (D. Colo. Feb. 10, 2011) ("[T]he Court notes that neither its nor the parties' time is well-served by being involved in the 'struggle of the substance of suit' when potentially dispositive issues are adjudicated at the outset of a case."). And while the public has an interest in seeing constitutional violations redressed, it also has an interest in the appropriate allocation of judicial resources and the prioritization of matters. This

is—in part—why courts should have broad discretion in determining whether to grant a motion to stay.

The fourth factor concerns the interests of persons not parties to the litigation. Here, there are several witnesses who will likely have to be deposed. The burden on them is not insubstantial because the preparation and the deposition itself can be time-consuming. *See generally Hay v. Family Tree, Inc.*, No. 16-cv-03143-CMA-KLM, 2017 WL 2459777, at *2 (D. Colo. June 6, 2017) (finding the fourth factor to weigh in favor of a stay, where discovery was likely to "involve significant efforts concerning others who are not parties to th[e] lawsuit"). That said, two of those witnesses, Mr. Aguilera and Ms. Casias, are Mr. Sgaggio's family members and may have an interest in seeing this matter proceed. Because this factor could be weighed in either direction, the Court finds it to be neutral.

On this record, then, having weighed the appropriate factors and found that three weigh in favor of a stay, one weighs against it, and another is neutral, the Court finds a temporary stay of discovery is warranted.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

(1) The "Defendants' Motion for Stay of Discovery Pending Ruling on Motion to Dismiss" (Doc. No. 14) is **GRANTED**.

(2) Discovery in this matter is **STAYED** pending a ruling on Defendants' Motion to Dismiss. (Doc. No. 12.)

(3) The parties **SHALL** file a joint status report within ten (10) days of a final ruling on the outstanding motion to dismiss, if any portion of the case remains, to advise whether a scheduling conference should be set.

(4) The Clerk is hereby directed to send a copy of this Order to:

Delbert Elmer Sgaggio, Jr
1850 North Academy Boulevard
Colorado Springs, CO 80909

Dated this 3rd day of January, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge