IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–02043–PAB–MDB

DELBERT SGAGGIO,

     Plaintiff,

v.

MARIO DIAZ, in his personal and professional capacity, and
THE CITY OF PUEBLO, a municipal corporation,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

     This matter is before the Court on Defendant Mario Diaz ["Defendant Diaz"] and the City of Pueblo's ["the City," collectively "Defendants"] Motion to Dismiss. (["Motion"], Doc. No. 12.) Plaintiff filed a response to the Motion (["Response"], Doc. No. 18), to which Defendants have replied. (["Reply"], Doc. No. 23.) After considering the Motion, briefing, and relevant case law, the Court respectfully **RECOMMENDS** that the Motion to Dismiss is **GRANTED**.

### SUMMARY FOR *PRO SE* PLAINTIFF

     The Court is recommending that Defendant's Motion to Dismiss be granted and that all of your claims be dismissed. The Court's decision is set forth in its entirety below, but in sum, the allegations in the Complaint do not support a claim that Defendant Diaz violated your First Amendment speech or religion rights, nor your rights under the Colorado Constitution.

Additionally, the Complaint does not identify any particular policy, custom, or procedure that would give rise to a claim against Defendant, City of Pueblo. As set forth in more detail below, you have fourteen days to object to this recommendation.

## STATEMENT OF THE CASE[1]

Plaintiff Delbert Elmer Sgaggio brings this action against Defendants Mario Diaz and the City of Pueblo, alleging First Amendment violations in connection with an incident that occurred in August 2020. (Doc. No. 1.) Plaintiff describes himself as a "spiritual guide in Southern Colorado, and a [c]ofounder of an [i]ndigenous [h]ouse of worship. (*Id.* at 2–3.) Plaintiff, and his father-in-law, Daniel Aguilera, grow a "Spiritual Sacrament"—ostensibly referring to marijuana. (*Id.*)

According to the Complaint, on August 12, 2020, Plaintiff was with Mr. Aguilera when Mr. Aguilera received a call from his wife, Crystal Casias. Ms. Casias informed Mr. Aguilera that the Pueblo Police Department was in Mr. Aguilera's backyard. (*Id.* at 2–4.) According to Plaintiff, Defendant Diaz "[gave] Crystal 24 hours to move marijuana plants that [were] growing in the backyard." (*Id.* at 4.) Plaintiff alleges that Crystal had her phone on speaker and that the telephonic communications between Plaintiff and Defendant Diaz were captured "on the Code Enforcement officers [b]ody [c]am." (*Id.*) Plaintiff alleges the following colloquy:[2]

---

[1] The Court previously reviewed Plaintiff's allegations in its Order granting Defendants' Motion to Stay. (Doc. No. 24.) The Statement of the Case largely reproduces the Court's prior description.

[2] Along with their Motion, Defendants have submitted the body camera footage of Code Enforcement Supervisor Karen Willson and Detective Brock Ruiz, each of which captures the allegations made in Plaintiff's Complaint. (Doc. No. 12 at 4–5); *see Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (stating that when reviewing a motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the

The first question I asked detective Mario Diaz is "What is the infraction?"

Mario Diaz refuses to answer the question. Mario Diaz states the following "I've already discussed everything with Mrs. Casias."[3]

Crystal then speaks out "Its [sic] because they are not in an enclosed space."

You can then here [sic] me on speaker phone "They are not in an enclosed space?"

Mario Diaz "That is correct sir"

I reply to Defendant Diaz "well there's a lock on the gate, and you know it's protected by the Colorado Constitution right?"

Mario Diaz "it is not sir. We are given [sic] [M]iss Casias an opportunity, to correct the issue if not, we will come back and issue some tickets. And we will destroy the plants. So I'm thinking we are being pretty fair as to not taking the plants right now. And not issuing a citation. So we will be back about this time tomorrow. And if they're not gone. And you haven't complied, and then we, can moved some other way."

I then ask Mario Diaz "OK did you go to her door and knock on it first? Or did you go and step on the property and look in the back?"

Mario Diaz refuses to answer the question. He says "have a nice day" and then gives the phone back to Crystal. At this point you can tell on the body Cam video that Mario Diaz is pissed off. Crystal continues to converse with the, [sic] three Pueblo government officials in her backyard. You can then hear me on the speaker again loudly stating the following "Tell them you need to see the search warrant! Do they have a search warrant?"

Crystal "Do you have a search warrant?"

---

plaintiff's claim and the parties do not dispute the documents' authenticity"); *Myers v. Brewer*, No. 17-2682, 2018 WL 3145401, at *1 (D. Kan. June 27, 2018), *aff'd*, 773 F. App'x 1032 (10th Cir. 2019) (applying *Oxendine*'s rule to video recordings). The Court has reviewed Ms. Willson's body camera, which largely aligns with Plaintiff's allegations.

[3] Defendant Diaz offered to leave his phone number with Ms. Casias if Plaintiff wished to inquire about the matter further. (Doc. No. 12 Ex A-2 at 8:55–9:00.) Defendant Diaz also agreed to leave Ms. Casias his card and badge number. (*Id.* at 9:55–10:00.)

Mario Diaz "No ma'am. You voluntarily took us back here, so we were able to examine your grow. If I needed a search warrant for that, I could have got one. Yes absolutely. And I would've took all your plants, and giving you a citation. We are not doing that."

I loudly interrupt on speaker. 'you don't have the right to take everyone's plants just because you have a search warrant! Are you with the county or are you with the city?'

Crystal then Ask [sic] Defendant Diaz. OK I just want to know, is there any way I can file an appeal against this?'

Mario Diaz replies. 'What appeal? Ma'am it's city ordinance.'

I once again interject with my big mouth. 'It doesn't matter it's due process. Do you understand due process [s]ir? Do you understand the 5th and the 14th Amendment [s]ir? That's what I'm asking. We can go to federal court real quick right here.'

The body camera video then shows Mario Diaz hanging up the phone.
Crystal 'Can I have my phone back'

Mario Diaz gives the phone back, in a very cocky fashion. 'If you have any more questions let us know. I'm not here to argue with your boyfriend over the phone. OK Tomorrow ma'am about this time. You got the time. Alright tomorrow 3 o clock or Mrs. Casias will be receiving a citation.

Crystal can be heard being distraught in the background.

(*Id.* at 4–8.) Plaintiff includes a picture of Defendant Diaz and claims there is "a big problem in America today. The [d]ipshit pictured above, is that problem." (*Id.* at 8.) Plaintiff goes on to make various allegations, including that "the plants were protected under the Colorado constitution," that there were due process violations against Mr. Aguilera and his wife, and that the landlord—who was sued by Mr. Aguilera in small claims court—was the one to call the police, therefore "this was a retaliation." (*Id.* at 8–9.) Plaintiff then alleges what amounts to the crux of his complaint against Defendants:

> My back and forth with defendant Mario Diaz is a matter of public concern.
> We're dealing with a public servant who is lying out of his ass. He has absolutely
> zero clue as to what, due process is, yet he holds the rank of detective. This is
> utterly disgusting. The video shows a ridiculous abuse of power, and no respect
> for the Colorado Constitution. Defendant Diaz does not agree with my viewpoint,
> he stopped my speech by hanging up the phone. This is stopping my message, my
> vibrations, and my sincerely held spiritual beliefs of defending members of my
> flock. Crystal is also a member of our Indigenous house of worship.

(*Id.* at 9.) Plaintiff alleges that the "broadcasting of [his] speech from Crystal[']s phone was speech regarding: Due Process, the 5th and 14th Amendment and the Colorado Constitution. This is protected speech under the First Amendment." (*Id.* at 11–12.) He claims that "Defendant Diaz responded to my First Amendment activity with retaliation, by hanging up Crystal[']s phone and stopping my constitutionally protected activity…. Defendant Diaz's retaliatory actions and hanging up crystals [sic] phone, was meant to punish me for exercising my First Amendment." (*Id.* at 13–14.)

Plaintiff brings three claims pursuant to 42 U.S.C. § 1983: one for the alleged violation of the freedom of speech guarantee, one for alleged retaliation in connection with the exercise of first amendment rights, and one for the violation of the free exercise of religion guarantee. (*See id.* at 11–17.) Plaintiff also brings a Colorado constitutional claim against Defendant Diaz under C.R.S. § 13-21-131, which authorizes a civil action for the deprivation of constitutional rights by peace officers. (*Id.*)

Defendants have moved to dismiss the Complaint. (Doc. No. 12.) That motion has been referred to the undersigned for a report and recommendation. (Doc. No. 13.) In their Motion, Defendants argue that hanging up the phone does not amount to a law that abridges freedom of speech, nor does it amount to the type of conduct that is considered retaliatory, such as arresting, fining, or harassing an individual based on what they say. (Doc. No. 12 at 5–6.) Defendants

argue, therefore, that "Plaintiff has failed to plausibly allege a violation of free speech under the First Amendment and, thus, this claim should be dismissed." (*Id.* at 6.) Defendants parrot this argument in rebuffing Plaintiff's Colorado constitution claim. (*Id.* at 12.) Defendants also argue that Plaintiff has not set forth a valid claim for retaliation because he does not plausibly allege "that Defendant Diaz's action caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in protected activity, nor [does he allege] that Defendant Diaz's actions were substantially motivated as a response to Plaintiff's right to free speech." (*Id.* at 9.) According to Defendants, the free exercise claim also fails because even if Plaintiff could prove that defending his father-in-law was part of Plaintiff's sincerely held religious beliefs, the act of hanging up the phone does not constitute an impermissible burden on Plaintiff's religious freedoms. (*Id.* at 11–12.) Finally, Defendants argue that because there is no underlying constitutional violation, the *Monell* claim against the City fails, and Defendant Diaz is entitled to qualified immunity. (*Id.* at 12–15.)

In response to Defendants' motion to dismiss, Plaintiff cites various cases illustrating the suppression of free speech. (Doc. No. 20 at 3–5.) Plaintiff also makes several arguments in support of his claims, insisting that his speech was constitutionally protected, that hanging up the phone stopped his speech and that he suffered injury as a result. He explains that the act of hanging up the phone "stopp[ed] my message, my vibrations, and my sincerely held spiritual beliefs of defending members of my flock." (*Id.* at 9.) He also contends:

> My speech are the vibrations that are sent into the Universe. Just as a Christian or Muslim may choose to pray. All vibrations, I send into the universe our sincerely held spiritual activities protected by the 1st amendment. As I am communicating with Spirit in the traditional and historical context related to my spiritual beliefs. This is one reason we never speak bad about ourselves, for everything we say will happen.

(*Id.* at 10.)

## STANDARD OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## II.    *Pro Se* **Plaintiff**

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## ANALYSIS

### I.      Claims Brought Against Defendant Diaz

#### A.  Plaintiff has Failed to Plausibly Allege a First Amendment Free Speech Violation

Plaintiff first claims that Defendant Diaz "hanging up Crystal[']s phone was a denial of [his] free speech guaranteed by the First Amendment to the Constitution of the United States." (Doc. No. 1 at 12.)

The First Amendment states, "Congress shall make no law... abridging the freedom of speech." U.S. CONST. amend. I.; *see U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999) ("As a threshold requirement for the application of the First Amendment, the government action must abridge or restrict protected speech."). "By incorporation through the Fourteenth Amendment, this prohibition applies to states and their political subdivisions." *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 979 (10th Cir. 2020). The First Amendment "applies not only to legislative enactments, but also to less formal governmental acts" such as city ordinances, policies, and acts intended to cut off protected speech, such as arrest. *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1217 (10th Cir. 2021) (quoting *Evans v. Sandy City*, 928 F.3d 1171, 1181 (10th Cir. 2019), *amended and superseded on reh'g*, 944 F.3d 847 (10th Cir. 2019)).

Here, Plaintiff does not challenge a legislative enactment nor city ordinance or policy. At issue is Defendant Diaz's termination of Plaintiff's phone call during the investigation into Ms.

Casias' marijuana plants. In bringing this claim, Plaintiff apparently contends that the termination of his phone call was a governmental act constituting an abridgment of speech. But Plaintiff relies on cases that do not support his argument. (*See* Doc. No. 1 at 3–5.) Those cases discuss unrelated issues such as a pre-existing regulatory scheme, prior restraints, freedom of the press and the free exercise of religion, and/or they concern substantially different fact patterns. *See* W. *Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) (holding that a regulation requiring public school children to salute the American flag violated the First Amendment); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (holding that a regulation prohibiting the wearing armbands to schools in protest of the Vietnam War and providing for suspension of any student refusing to remove such armband violated the First Amendment); *Sherbert v. Verner*, 374 U.S. 398 (1963) (holding that a state could not apply eligibility provisions of unemployment compensation statute, which would require her to work on Saturday, so as to deny benefits to a claimant who had refused employment because of her religious beliefs); *New York Times Co. v. United States*, 403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971) (holding that the government had not met its burden of showing justification for imposition of a restraint on the publication of classified documents related to the Vietnam War); *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 854, 102 S. Ct. 2799, 2801, 73 L. Ed. 2d 435 (1982) (holding that "[l]ocal school boards may not remove books from school libraries simply because they dislike the ideas contained in those books").

On the other hand, and more applicable to this case, Defendants cite case law finding that police officers have some latitude to restrict speech in the course of an investigation without running afoul of the First Amendment. For example, Defendants cite *Xuli Zhang v. Regan*, in

which the court found that an officer's command that the subject of an investigation terminate her ongoing phone call "was entirely appropriate, and not constitutionally offensive," further stating it was "well settled that the First Amendment is not violated when an individual is ordered to stop talking during an officer's otherwise lawful investigation or interrogation." No. 1:10CV1329, 2011 WL 1456188, at *3 (E.D. Va. Apr. 14, 2011) (citing *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008)).

More fundamentally, however, while Plaintiff has the constitutional right to convey protected speech, he does not have the right to force a government audience to listen. *See Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.") Likewise, Plaintiff does not have a constitutional right to mandate a public official hear his speech in any time and manner he chooses. *See, e.g.*, *Griffin v. Bryant*, 677 F. App'x 458, 462 (10th Cir. 2017) (finding that a "five-minute time limit for the Public Input portion of [a city] Council meeting was not an unconstitutional restriction" on speech); *see also Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."). And, while hanging up a phone abruptly might be offensive under some circumstances, in this case, and for purposes of the claim Plaintiff brings here, it is indistinguishable from Defendant Diaz handing the phone back to Ms. Casias and walking away while Plaintiff was still on the line. Further, the termination of the phone call had no practical impact on Plaintiff's ability to convey his message to Ms. Casias by simply

initiating another phone call or on Plaintiff's ability to otherwise formally challenge the investigation into Ms. Casias's marijuana plants.[4] Accordingly, the Court does not find that Defendant Diaz abridged Plaintiff's right to free speech by hanging up Ms. Casias's phone.

The Court respectfully recommends dismissing this claim.

### B.  Plaintiff has Failed to Plausibly Allege a First Amendment Retaliation Claim

In his second claim, Plaintiff contends that by hanging up Ms. Casias' phone, Defendant Diaz retaliated against Plaintiff for engaging in protected speech. (Doc. No. 1 at 13–15.)

It is well-established that "the First Amendment bars retaliation for protected speech." *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998). "To state a claim for First Amendment retaliation, a plaintiff must allege (1) that [he] was engaged in constitutionally protected activity, (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to [his] protected conduct." *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021), *cert. denied*, 212 L. Ed. 2d 216, 142 S. Ct. 1208 (2022) (citing *McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010)).

### i.  Plaintiff was engaged in protected activity.

Though not significantly addressed by the parties, Court finds that Plaintiff was engaged in protected activity during his phone call with Ms. Casias and Defendant Diaz. In *Houston v. Hill*, the Supreme Court found an ordinance prohibiting oral interruptions of police officers unconstitutionally overbroad. 482 U.S. 451 (1987). "In reaching this result, the Court stated that

---

[4] Indeed, at the end of the body camera footage, Ms. Casias can be heard off-camera saying, "he's saying that …." Ms. Casias is ostensibly again speaking to Plaintiff. (Doc. No. 12 Ex A-2 at 12:05–12:10.)

'the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. The Court added: 'Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *McCormick v. City of Lawrence, Kansas*, 253 F. Supp. 2d 1172, 1193 (D. Kan. 2003), *aff'd sub nom. McCormick v. City of Lawrence, Kan.*, 99 F. App'x 169 (10th Cir. 2004) (quoting *Hill*, 482 U.S. at 461). Though *Hill* involved a facial challenge to an ordinance, the Court notes that *Hill*'s reasoning has been applied to the officer-action context. *See, e.g.*, *Sweatt v. Bailey*, 876 F.Supp. 1571 (M.D.Ala. 1995) (applying *Hill* to § 1983 retaliation claim by a prisoner who claimed he was beaten while in detention for calling an officer an "ass"). Based on the Complaint and body camera footage, the Court does not believe Plaintiff's conduct fell outside the prescriptions of *Hill*, and thus finds his speech protected. Accordingly, the Court moves to the second prong of the analysis.

### ii. Plaintiff has not established he suffered an injury sufficient to chill future protected activity.

"[A] plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech" that caused sufficient injury to chill the future protected speech of an ordinary person. *Houston Cmty. Coll. Sys. v. Wilson*, 212 L. Ed. 2d 303, 142 S. Ct. 1253, 1260 (2022) (quoting *Nieves v. Bartlett*, 139 S.Ct 1715, 1722 (2019); *see Eaton v. Meneley*, 379 F.3d 949, 955 (10th Cir. 2004) (explaining that the standard for evaluating the chilling effect on speech is "objective, rather than subjective"). "Some [chilling] actions may be easy to identify—an arrest, a prosecution, or a dismissal from governmental employment." *Id*. Other, less definite actions can also constitute

chilling adverse acts. For example, in *Irizarry v. Yehia*, the Tenth Circuit found a police officer who interfered with the plaintiff's filming of a traffic stop by "intentionally position[ing] himself directly in front" the plaintiff, shining an "extremely bright flashlight" into the camera, verbally harassing the plaintiff, driving his squad vehicle at the plaintiff multiple times, and "repeatedly" blasting his air horn at the bystander, caused injury which would have a chilling effect on speech. 38 F.4th 1282, 1286, 1292–93 (10th Cir. 2022); *see Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007) (finding injury sufficient to establish chilling by a plaintiff who had brought several tax appeals challenging property tax assessments when, during a meeting between plaintiff and government tax appraisers, an officer "repeatedly and intentionally 'bumped' [the plaintiff]," "held his hand on his gun and made menacing looks," and told the plaintiff "[i]f you show up for another tax appeal hearing, I might have to shoot you").

Here, the Court finds that Plaintiff has failed to establish that Defendant Diaz's actions would chill a person of ordinary firmness from continuing to engage in protected speech. While the Court notes that a police officer's actions are inherently more likely to be chilling than those of other government officials, it does not believe that the act of hanging up the phone, in and of itself, was sufficiently severe so as to chill the speech of an ordinary person. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) ("We emphasize that … certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations[.]"). Notably, prior to terminating the call, Defendant Diaz engaged with Plaintiff for multiple minutes, including agreeing to leave his card such that Plaintiff or Ms. Casias could contact him with additional questions. Further, Plaintiff does not allege that Defendant Diaz threatened Plaintiff, nor does he allege that Defendant Diaz indicated that Plaintiff's comments or future appeals

could result in additional investigation or other legal action or harassment. Additionally, as noted above, terminating the call had little, if any, practical impact on Plaintiff's ability to communicate with Ms. Casias or formally challenge the police activity. *Cf. Irizarry*, 38 F.4th 1282 (finding that the officer defendant chilled speech by wholly obstructing the filming of a traffic stop by shining his flashlight into the camera and driving his squad vehicle at the plaintiff). On these allegations, and even drawing all reasonable inferences in Plaintiff's favor, the Court finds no injury sufficient to chill a person of ordinary firmness from continuing to engage in protected speech.

Accordingly, the Court respectfully recommends dismissing this claim.

### C.  Plaintiff has Failed to Plausibly Allege a First Amendment Free Exercise of Religion Claim

In his third claim, Plaintiff asserts a First Amendment Free Exercise Clause violation. (Doc. No. 1 at 15–16.) Plaintiff states that "[d]efending my father-in-law Daniel Aguilera and his property, is a sincerely held, spiritual belief and is constitutionally protected under the First Amendment['s] [F]ree [E]xercise [Clause]." (*Id.* at 16.) Plaintiff contends that when Defendant Diaz terminated Plaintiff's call with Ms. Casias, he interfered with Plaintiff's free exercise of his religious beliefs by "stopping my message, my vibrations, and my sincerely held spiritual beliefs of defending members of my flock." (*Id.*; Doc. No. 20 at 9.)

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I; *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (applying the Free Exercise Clause to the states and their political subdivisions through the Fourteenth Amendment). "The first questions in any free exercise claim are whether the plaintiff's beliefs

are religious in nature, and whether those religious beliefs are sincerely held. Only beliefs which are religious in nature are protected by the Free Exercise Clause." *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997), *opinion vacated in part on other grounds on reh'g en banc*, 159 F.3d 1227 (10th Cir. 1998) (internal citation omitted). Nevertheless, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981)."To establish a free-exercise claim, [a plaintiff] must show that the government has placed a burden on the exercise of his religious beliefs or practices." *Fields v. City of Tulsa*, 753 F.3d 1000, 1009 (10th Cir. 2014). "A plaintiff states a claim [that his] exercise of religion is burdened if the challenged action is coercive or compulsory in nature." *Id.* (alteration in original) (quoting *Bauchman v. W. High Sch.*, 132 F.3d 542, 557 (10th Cir. 1997)).

The Complaint fails to establish that Defendant Diaz took action burdening Plaintiff's exercise of religion so as to constitute a First Amendment violation. Even taking as true—as the Court must at this stage—that Plaintiff was praying or otherwise practicing his religious beliefs as he argued with Defendant Diaz about the nature of the City's investigation, there is no indication that Defendant Diaz had any understanding Plaintiff was engaged in religious practice. To this end, the Complaint offers no allegation that would suggest Defendant Diaz intended to burden Plaintiff's religious practice by hanging up Ms. Casias' phone. In other words, Defendant Diaz's action was facially neutral. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) ("[A government action is neutral] so long as its object is something other than the infringement or restriction of religious practices."). When government action is facially neutral, the Court reviews the act simply for a "rational basis." *Taylor v.*

*Roswell Indep. Sch. Dist.*, 713 F.3d 25, 52 (10th Cir. 2013); *see Grace United Methodist Church*, 451 F.3d at 649 ("Neutral [acts] of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief.") "Under rational basis review, the action survives a constitutional challenge if it is at least rationally related to a legitimate government interest." *Taylor*, 713 F.3d at 52 (quotation omitted).

Defendant Diaz's decision to terminate Plaintiff's phone call was rationally related to legitimate government interests. First, the action was rationally related to law enforcement's interest in conveying necessary information to citizens. Plaintiff's conversation with Ms. Casias, and his eventual questioning and arguing with the officers, was disruptive and obstructive to Defendant Diaz and Code Enforcement Supervisor Willson's efforts to convey necessary information to Ms. Casias—that her marijuana plants were improperly stored, that she would be allowed 24 hours to rectify the situation, and that she could review the relevant ordinances online. Further, the termination of the call was related to law enforcement's interest in defusing encounters liable to become hostile or volatile. As Plaintiff's arguments became more and more hostile—including his screaming at the time Defendant Diaz hung up the phone—the situation turned from cordial and informative to emotional and somewhat volatile. Finally, and perhaps most importantly, law enforcement is also interested in conducting its affairs reasonably efficiently so that it can be available to respond to other happenings requiring its presence. As such, after conveying all necessary information to Ms. Casias, Defendant Diaz had a rational basis for terminating his conversation with Plaintiff—either by leaving the scene or ending the call—in order for the officers to move on to other business.

Accordingly, Plaintiff's Complaint does not establish a First Amendment Free Exercise Clause violation and the Court recommends dismissing this claim.

### D.  Plaintiff has Failed to Plausibly Allege a Violation of Article II, Section 10 of the Colorado Constitution

Next, Plaintiff claims that Defendant Diaz violated article II, section 10 of the Colorado Constitution. (Doc. No. 1 at 17); *see* Colo. Rev. Stat. Ann. § 13-21-131 ("A peace officer … who, under color of law, subjects … any other person to the deprivation of any individual rights that create binding obligations on government actors secured by … article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief.").

Article II, section 10 of the Colorado Constitution provides: "No law shall be passed impairing the freedom of speech; every person shall be free to speak …whatever he will on any subject …." COLO. CONST. art. II, § 10. The Colorado Supreme Court has described article II, section 10 as an "affirmative acknowledgement of the liberty of speech, and … of greater scope than that guaranteed by the First Amendment." *Bock v. Westminster Mall Co.*, 819 P.2d 55, 59 (Colo. 1991). However, this is not to say that section 10 requires courts to undertake an analysis wholly separate from, and without regard to, the First Amendment. Indeed, in cases where the allegations at issue "fall[] squarely within [the First Amendment's] protections," the Colorado Supreme Court has contained its examination "solely [to] the federal Constitution." *CF&I Steel, L.P. v. United Steel Workers of Am.*, 23 P.3d 1197, 1200 (Colo. 2001) (considering a Colorado law "prohibit[ing] any labor picketing at an employee's residence); *see Lewis v. Colo. Rockies Baseball Club*, 941 P.2d 266 (Colo. 1997) (considering whether the "areas around Coors Field baseball stadium are public forum property for free speech purposes"); *see also Curious Theatre*

*Co. v. Colorado Dep't of Pub. Health & Env't*, 220 P.3d 544, 552 (Colo. 2009) ("With respect to content-neutral time, place, or manner regulations and the regulation of conduct incidentally affecting symbolic expression, by contrast, we have applied the four-part test of [*United States v. O'Brien*, 391 U.S. 367 (1968)] to uphold legislation against challenges under both the First Amendment and article II, section 10, without suggesting any distinction between the two.").

Here, the Court has not identified, nor has Plaintiff provided, any reason why the Court's analysis of this claim should differ from Plaintiff's Count I First Amendment claim. Accordingly, as with Count I, the Court respectfully recommends dismissing this claim.

## II.      Plaintiff has Failed to Plead viable *Monell* Claims Against the City

Plaintiff's federal Constitutional claims—Counts I, II, and III—are also brought against the City.

Under *Monell v. Dept. of Soc. Servs. Of City of N.Y.*, a plaintiff who brings claims against a municipality must establish: (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy, and (3) a direct causal link between the custom or policy and the violation alleged. 436 U.S. 658, 694 (1978).

Here, Plaintiff cannot sustain a *Monell* claim against the City because he has failed to allege facts plausibly establishing that Defendant Diaz, or any other City employee, committed a constitutional violation. *See supra* at 9–18. Additionally, even if Plaintiff had plausibly alleged a constitutional violation by a City employee, he would still have to allege that a particular policy, custom, or practice resulted in that violation. But Plaintiff's allegations on this front are entirely conclusory, referencing City "policies, practices, and customs," only generally and without any factual detail. (*See* Doc. No. 1 at 10, 12, 14, 16); *Iqbal*, 556 U.S at 678 ("A pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alternations omitted)).

Accordingly, the Court respectfully recommends dismissing this claim.

## CONCLUSION

For the foregoing reasons the Court **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. No. 12) is **GRANTED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 19th day of May, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge