IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02043-PAB-MDB

DELBERT SGAGGIO,

    Plaintiff,

v.

MARIO DIAZ, in his personal and professional capacity, and
THE CITY OF PUEBLO, a municipal corporation,

    Defendants.

---

## ORDER

---

This matter comes before the Court on the Recommendation of United States Magistrate Judge [Docket No. 26]. Plaintiff Delbert Sgaggio objects to the recommendation. Docket No. 27.

**I. BACKGROUND**

The facts are set forth in Magistrate Judge Maritza Dominguez Braswell's recommendation. Docket No. 26 at 2-6. Neither side has objected to the facts. Accordingly, the Court adopts these facts for the purposes of ruling on the objections.

This case concerns an incident that occurred on August 12, 2020 involving Detective Mario Diaz.[1] Docket No. 1 at 2, 9; Docket No. 26 at 2. Mr. Sgaggio describes himself as a "spiritual guide in Southern Colorado, and a cofounder of an indigenous

---

[1] Mr. Sgaggio's complaint alleges that Detective Diaz was working for the City of Pueblo at all times relevant to the complaint. Docket No. 1 at 2.

house of worship" and grows a "Spiritual Sacrament"—ostensibly marijuana—with his father-in-law, Daniel Aguilera. Docket No. 26 at 2 (alteration omitted).

On August 12, 2020, Mr. Aguilera received a telephone call from his wife, Crystal Casias. *Id.* Ms. Casias informed Mr. Aguilera that the Pueblo Police Department was in Mr. Aguilera's backyard and that Detective Diaz had instructed Ms. Casias to move the marijuana plants that were growing there. *Id.* Mr. Sgaggio was with Mr. Aguilera at the time of the telephone call. *Id.* Ms. Casias allowed Mr. Sgaggio to speak to Detective Diaz directly by placing the call on speakerphone. *Id.* Mr. Sgaggio asked Detective Diaz what infraction he was investigating and whether he had a warrant, insisted that Detective Diaz had no right to take Ms. Casias' plants even if he had a warrant, asked Detective Diaz if he understood the Fifth and Fourteenth Amendments, and threatened to file an action in federal court. *Id.* at 3-4. Detective Diaz initially engaged with Mr. Sgaggio over the telephone. *Id.* Mr. Sgaggio alleges that after several exchanges with Detective Diaz, footage from a body camera[2] worn by a Code Enforcement officer who was present then shows what Mr. Sgaggio describes as "Diaz hanging up the phone."[3] *Id.* at 4; Docket No. 1 at 7.

Mr. Sgaggio initiated this action on August 10, 2022. Docket No. 1. He contends that, when Detective Diaz terminated the telephone call, he violated Mr. Sgaggio's rights to freedom of speech and free exercise of religion and retaliated against Mr. Sgaggio for

---

[2] Judge Domiguez Braswell's recommendation states that she reviewed the body camera footage of Code Enforcement Supervisor Karen Wilson and that the footage "largely aligns with [Mr. Sgaggio's] allegations." Docket No. 26 at 2-3 n.2.

[3] The recommendation interprets Mr. Sgaggio's allegation that Detective Diaz "[hung] up the phone" as an allegation that he terminated the telephone call. *See, e.g.,* Docket No. 26 at 9. Mr. Sgaggio does not object to this interpretation. Docket Nos. 27, 29.

exercising his freedom of speech.  Docket No. 1 at 11-17.  The complaint alleges four claims against Detective Diaz and the City of Pueblo: (1) violation of Mr. Sgaggio's First Amendment right to free speech; (2) retaliation against Mr. Sgaggio in response to speech protected by the First Amendment; (3) violation of Mr. Sgaggio's First Amendment right to free exercise of his religion; and (4) violation of Mr. Sgaggio's right to freedom of speech under the Colorado Constitution.  *Id.* at 11-17.  Defendants filed a motion to dismiss Mr. Sgaggio's claims on November 21, 2022.  Docket No. 12.  Judge Dominguez Braswell entered a recommendation that the Court grant the motion to dismiss on May 19, 2023.  Docket No. 26 at 20.  Mr. Sgaggio filed an objection to the recommendation on May 24, 2023.  Docket No. 27.  The defendants responded to the objection and Mr. Sgaggio replied.  Docket Nos. 28, 29.

## II. LEGAL STANDARD

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *Gordanier v. Montezuma Water Co.*, No. 08-cv-01849-PAB-MJW, 2010 WL 935665, at *1 (D. Colo. Mar. 11, 2010) ("Timely objections to magistrate judge recommendations are reviewed de novo pursuant to Rule 72(b), rather than under the clearly erroneous/contrary to law standard applied to magistrate judge orders by Rule 72(a).").  An objection is "proper" if it is both timely and specific*.  United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Id*.

There is no dispute that Judge Dominguez Braswell's recommendation to dismiss Mr. Sgaggio's claims is dispositive. The Court, therefore, reviews the recommendation de novo. *See Gordanier*, 2010 WL 935665, at *1. Because Mr. Sgaggio is proceeding *pro se*, the Court will construe his objections and pleadings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court will evaluate Mr. Sgaggio's arguments to the extent that they are responsive to the recommendation and sufficiently developed for the Court to understand them.

## III. ANALYSIS

### A. Freedom of Speech

The First Amendment forbids government actors from "abridging the freedom of speech." U.S. Const. Amend. I; *see Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 979 (10th Cir. 2020) (holding that the First Amendment "applies to states and their political subdivisions"). Mr. Sgaggio's complaint alleges that Detective Diaz violated Mr. Sgaggio's First Amendment right to freedom of speech when the officer ended a telephone call that Ms. Casias had made to Mr. Aguilera, but which Mr. Sgaggio used to talk to Detective Diaz. Docket No. 1 at 12. Judge Dominguez Braswell found that this action did not violate Mr. Sgaggio's right to free speech because Detective Diaz was not required to listen to Mr. Sgaggio indefinitely under the First Amendment.[4] Docket No. 26 at 11.

---

[4] Judge Dominguez Braswell also considered whether Detective Diaz's termination of the phone call infringed on Mr. Sgaggio's First Amendment right to speak to Ms. Casias, and concluded that it did not because terminating the call had no practical impact on Mr. Sgaggio's ability to convey his message to her. Docket No. 26 at 11. However, Mr. Sgaggio's complaint does not appear to allege that his First

4

Mr. Sgaggio appears to object on the basis that he has a First Amendment right to verbally challenge a police investigation that was abridged when Detective Diaz ended the telephone call.  Docket No. 27 at 3.  The Supreme Court has held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987).  However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."  *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

Judge Dominguez Braswell's recommendation cites two cases establishing that the government may limit a citizen's ability to force a government audience to listen to his or her speech.  Docket No. 26 at 11.  In *Minnesota State Bd. for Cmty. Colleges v. Knight,* 465 U.S. 271, 275-77 (1984), the Supreme Court considered policy by the Minnesota State Board for Community Colleges that allowed only certain employee representatives to participate in "meet and confer" sessions where employees could weigh in on policy decisions by school administrations and the state board.  The Supreme Court upheld the policy, stating that "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."  *Id.* at 285.  Similarly, in *Griffin v. Bryant,* 677 F.

---

Amendment rights were violated because he was prevented from speaking to Ms. Casias, as opposed to him being "prevented from speaking on a matter of public concern."  Docket No. 1 at 12-13.  He also appears to characterize his speech as "expressing viewpoints critical of [the] City of Pueblo and it's [sic] Police" and "exercising [his] rights of free speech and dissent."  *Id.* at 12-14.  Accordingly, the Court will consider Mr. Sgaggio's free speech and retaliation claims only insofar as they invoke a First Amendment right to criticize a police officer during the course of an investigation.

App'x 458, 461-62 (10th Cir. 2017) (unpublished), the Tenth Circuit found that a village council did not violate the plaintiff's First Amendment rights when it did not make time for his remarks during the agenda portion of a council meeting, but instead allowed him to speak during the "public input" portion of the meeting, subject to a five-minute time limit.  Although the decision did constrain the plaintiff's ability to speak during the meeting, the Tenth Circuit noted that "the Supreme Court has explained, 'the First Amendment does not guarantee the right to communicate one's views at all times and places or in any [manner] that may be desired.'"  *Id.* at 462 (quoting *Heffron*, 452 U.S. at 647).

      Mr. Sgaggio argues that these cases are irrelevant because he was verbally challenging a police officer during an investigation, not participating in a meet and confer process or a city council meeting.  Docket No. 27 at 3-4.  However, Mr. Sgaggio cites no authority indicating that the principles established by *Knight* and *Griffin*—that the First Amendment does not require government actors to listen to citizens' speech or guarantee the right to communicate one's views to a government audience for any length of time that the speaker desires—do not apply when the audience is a police officer and do not apply with greater force when the police officer is in the middle of an investigation.[5]  He likewise cites no authority supporting the position that speech to

---

[5] Mr. Sgaggio's objection appears to argue that *Hill* is more relevant to his claim than *Knight* or *Griffin* because that case concerned a police encounter.  Docket No. 27 at 3-4.  Although *Hill* upheld a citizen's right to challenge police officers, it did not discuss whether and to what extent police officers are required to listen to those challenges.  *See Hill*, 482 U.S. at 458-67.  Therefore, *Hill* is irrelevant to the question of whether the First Amendment forbade Detective Diaz from terminating the telephone call while Mr. Sgaggio was speaking to him.

police officers is an exception to the principle that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron*, 452 U.S. at 647. Accordingly, Mr. Sgaggio has failed to plausibly allege that Detective Diaz's decision to terminate the telephone call and stop listening to Mr. Sgaggio's speech violated Mr. Sgaggio's First Amendment rights. The Court will overrule Mr. Sgaggio's objection and dismiss his claim for violation of his First Amendment freedom of speech.

### B.  First Amendment Retaliation

Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and citation omitted). To establish a First Amendment retaliation claim, plaintiff must demonstrate (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's actions were substantially motivated as a response to plaintiff's exercise of his First Amendment speech rights. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).

Mr. Sgaggio claims that Detective Diaz's termination of the telephone call constituted First Amendment retaliation. Docket No. 1 at 13-15. The complaint states that Detective Diaz "responded to [Mr. Sgaggio's] First Amendment activity with retaliation, by hanging up [Ms. Casias'] phone and stopping [his] constitutionally protected activity." *Id.* at 13. Judge Dominguez Braswell found that Mr. Sgaggio failed to state a claim for First Amendment retaliation because he did not plausibly allege that

he had suffered an injury sufficient to chill a person of ordinary firmness from continuing to engage in protected speech.  Docket No. 26 at 13-15.  Although she acknowledges that "a police officer's actions are inherently more likely to be chilling than those of other government officials," Judge Dominguez Braswell concluded that "the act of hanging up the phone, in and of itself," was not "sufficiently severe so as to chill the speech of an ordinary person."  *Id.* at 14.  Because she found that Mr. Sgaggio failed to satisfy the second prong required to establish a First Amendment retaliation claim, Judge Dominguez Braswell recommends dismissing this claim.  *Id.* at 15.

Mr. Sgaggio does not appear to object to Judge Dominguez Braswell's conclusion that terminating the telephone call, alone, is not so chilling that it constitutes retaliation.  Instead, Mr. Sgaggio's objection attempts to introduce additional factual allegations about his perception of what was happening in Ms. Casias' yard at the time of the telephone call based on what he could hear over the telephone.  Docket No. 27 at 6.  According to Mr. Sgaggio, he "[knew] the interaction has got [sic] physical[ ] because Ms. Casias[ ] is [sic] asking for her phone back[ ] [and] she is [sic] also very distraught when she calls back," and he believed that Detective Diaz had "escalated the situation."  *Id.*  He argues that "[t]hese actions would be more than sufficient to chill a person of ordinary firmness from continuing to verbally challenge the police."  *Id.*

This objection fails for three reasons.  First, courts may only consider the allegations made within the operative complaint when ruling on a motion to dismiss.  *See Stratton v. United Launch All., L.L.C.*, No. 13-cv-01756-RBJ-KLM, 2014 WL 3644565, at *4 (D. Colo. July 23, 2014) ("On a 12(b)(6) motion to dismiss, the Court looks to the factual allegations made within the pleadings and not in other filings with

8

the Court.") (citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.")).  Mr. Sgaggio's allegations about his perception of events at the time of the telephone call are nowhere in his complaint.  Docket No. 1.  Although the complaint references the officer's "retaliatory actions," it alleges only a single action by Detective Diaz: terminating the telephone call.  *Id.* at 14.  Thus, only Mr. Sgaggio's allegation that Detective Diaz terminated the telephone call may be considered for purposes of ruling on the defendants' motion to dismiss because it is the only allegation contained in the complaint.  Second, Mr. Sgaggio does not claim in his complaint or his response to the defendants' motion to dismiss that his speech was chilled because of his perception that Detective Diaz had "escalated the situation."  Docket Nos. 1, 20.  This argument is therefore waived.  *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").  Third, even if he had included the allegation in his complaint, Mr. Sgaggio cites no caselaw to support his theory that a person's unsubstantiated belief that a third party might have become distraught due to the actions of the defendant would chill the speech of a person of ordinary firmness, which is a required element of a First Amendment retaliation claim.  *See Becker*, 494 F.3d at 925.  The Court rejects this theory.  Accordingly, the Court will overrule Mr. Sgaggio's objection and find that he has failed to plausibly allege a claim for First Amendment retaliation.

**C.  Free Exercise**

Under the First Amendment, government actors may not prohibit the free exercise of religion.  U.S. Const. Amend. I; *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that states and their political subdivisions are bound by the Free Exercise Clause).  "To establish a free-exercise claim, [a plaintiff] must show that the government has placed a burden on the exercise of his religious beliefs or practices" through a compulsory or coercive act.  *Fields v. City of Tulsa,* 753 F.3d 1000, 1009 (10th Cir. 2014) (citing *Bauchman v. W. High Sch.,* 132 F.3d 542, 557 (10th Cir. 1997)).  Even if a government action incidentally burdens a plaintiff's exercise of religion, it will survive a constitutional challenge so long as the goal of the action "is something other than the infringement or restriction of religious practices," and it is rationally related to a legitimate government interest.  *Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 649-50 (10th Cir. 2006).

Mr. Sgaggio claims that Detective Diaz infringed on Mr. Sgaggio's right to free exercise of his religion when he terminated the telephone call because it prevented Mr. Sgaggio from engaging in the religious practice of "defending members of [his] flock."  Docket No. 1 at 9.  The complaint explains that "speech is one of [Mr. Sgaggio's] most powerful tools" by which he practices his religion and that "[d]efending my father-in-law Daniel Aguilera and his property, is a sincerely held, spiritual belief."  *Id.* at 3, 15.

Judge Dominguez Braswell found that Mr. Sgaggio has not established a free exercise claim based on Detective Diaz's decision to terminate the telephone call because the complaint indicates that the action was facially neutral and rationally related to government objectives.  Docket No. 26 at 16-18.  Judge Dominguez Braswell

10

found that terminating the telephone call was facially neutral because, "[e]ven taking as true—as the Court must at this stage—that Plaintiff was praying or otherwise practicing his religious beliefs as he argued with Defendant Diaz about the nature of the City's investigation, there is no indication that Defendant Diaz had any understanding Plaintiff was engaged in religious practice. To this end, the Complaint offers no allegation that would suggest Defendant Diaz intended to burden Plaintiff's religious practice." *Id.* at 16. Judge Dominguez Braswell found that the decision to terminate the phone call was rationally related to three government interests: (1) conveying necessary information to citizens without disruption or obstruction; (2) defusing encounters liable to become hostile or volatile; and (3) conducting its affairs reasonably efficiently. *Id.* at 17. Based on her findings, Judge Dominguez Braswell concludes that Mr. Sgaggio's claim does not survive the rational basis test, and recommends dismissing it.

Mr. Sgaggio does not object to these findings or to Judge Dominguez Braswell's conclusion that his claim fails the rational basis test. Instead, he appears to object to the recommendation because he believes that his claim should not have been evaluated using the rational basis test, which he calls a "balancing test." Docket No. 27 at 6-8. He bases his argument on two Supreme Court decisions finding firearm regulations unconstitutional under the Second Amendment: *D.C. v. Heller*, 554 U.S. 570 (2008) and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Mr. Sgaggio claims that the rational basis test may not be applied to his free exercise claim in light of these decisions, arguing, "[i]f Government interest balancing test [sic] cannot apply to the Second Amendment[,] [t]hen Government interest balancing test [sic] cannot apply to the First Amendment." Docket No. 29 at 4. However, the Supreme

11

Court was not presented with a First Amendment challenge in either *Heller* or *Bruen*, and neither case's holding applies to the First Amendment.[6]  *See generally Heller*, 554 U.S. 570; *Bruen*, 142 S. Ct. 2111.  These cases are therefore irrelevant to Mr. Sgaggio's free exercise claim.  Mr. Sgaggio cites no other authority indicating that the rational basis test should not be applied to his free exercise claim, and the Court is aware of none.  Accordingly, the Court will overrule Mr. Sgaggio's objection and find that Mr. Sgaggio has failed to state a claim for violation of his right to freely exercise his religion.

### D.  Monell Liability

Under *Monell v. Dep't of Soc. Servs. of City of N.Y,* 436 U.S. 658, 694 (1978), a plaintiff bringing a constitutional claim against a municipality must allege (1) a constitutional violation by a municipal employee; (2) the existence of a municipal custom or policy; and (3) a direct causal link between the custom or policy and the alleged violation.  Judge Dominguez Braswell found that Mr. Sgaggio failed to plausibly state a *Monell* claim because he had not alleged a constitutional violation and his allegations

---

[6] Mr. Sgaggio identifies instances in the *Heller* and *Bruen* opinions where the Supreme Court references the First Amendment.  Docket No. 29 at 3-4 (quoting *Bruen*, 142 S. Ct. at 2132, 2156 (quoting *Heller*, 554 U.S. at 582)).  However, none of the quotations that Mr. Sgaggio cites indicate that the holdings from these cases apply to the First Amendment.  Rather, they are instances where the Supreme Court offers a comparison between protections of the Second Amendment and those of other amendments.  *See Bruen*, 142 S. Ct. at 2132, 2156; *Heller*, 554 U.S. at 582.  In other instances, Mr. Sgaggio uses brackets when quoting *Bruen* to replace references to the Second Amendment with references to the First Amendment.  Docket No. 27 at 7; Docket No. 29 at 4.  These alterations misconstrue the holding in *Bruen* and the use of brackets in this way runs contrary to Federal Rule of Civil Procedure 11.  *See* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge . . . the claims, defenses, and other legal contentions are warranted by existing law.").

concerning municipal policy "are entirely conclusory, referencing City 'policies, practices, and customs,' only generally and without any further detail." Docket No. 26 at 19. Mr. Sgaggio objects to both conclusions. Docket No. 27 at 9.

As discussed above, the Court finds that Mr. Sgaggio has failed to plausibly allege a constitutional violation by Detective Diaz. Therefore, Mr. Sgaggio has also failed to plausibly allege a claim against the City of Pueblo under *Monell*. *See Monell*, 436 U.S. at 694. The Court will overrule his objection and dismiss his claims against the City of Pueblo.

### E.  Colorado Constitutional Claim

Article II, Section 10 of the Colorado Constitution states, "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject." Colo. Const. Art. II, § 10. This protection is broader than the protection offered by the United States Constitution, but the Colorado Supreme Court will analyze a case based "solely on the federal Constitution" if it "falls squarely within its protections." *See, e.g.*, *CF&I Steel, L.P. v. United Steel Workers of America*, 23 P.3d 1197, 1200 (Colo. 2001) (citing *Lewis v. Colo. Rockies Baseball Club*, 941 P.2d 266, 271-72 (Colo. 1997)).

Judge Dominguez Braswell recommends the dismissal of Mr. Sgaggio's claim under the Colorado Constitution because "the Court has not identified, nor has [Mr. Sgaggio] provided, any reason why the Court's analysis of [the] claim should differ from [Mr. Sgaggio's] Count I First Amendment claim." Docket No. 26 at 19. Mr. Sgaggio's objection to this recommendation merely states that "[his] First Amendment was violated, [his] speech was stopped." Docket No. 27 at 11.

13

In a case where a plaintiff brings both federal and state law claims, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); 28 U.S.C. § 1367(c)(3) (permitting a district court to decline supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction").

In the Tenth Circuit, when "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), courts must dismiss pendent state law claims without prejudice "absent compelling reasons to the contrary." *Brooks v. Gaenzle,* 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims), *abrogated on other grounds by Torres v. Madrid*, 141. S. Ct. 989 (2021)); *Endris v. Sheridan Cnty. Police Dep't,* 415 F. App'x 34, 36 (10th Cir. 2011) (unpublished) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed.") (footnote omitted).  Accordingly, the Court will decline to exercise supplemental jurisdiction over Mr. Sgaggio's fourth claim and dismiss it without prejudice.

**IV. CONCLUSION**

Therefore it is

14

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 26] is **ACCEPTED in part**. It is further

**ORDERED** that Mr. Sgaggio's Objection to Recommendation of Unted States Magistrate Judge [Docket No. 27] is **OVERRULED**. It is further

**ORDERED** that defendants' Motion to Dismiss [Docket No. 12] is **GRANTED**. It is further

**ORDERED** that Mr. Sgaggio's first, second, and third claims are **DISMISSED with prejudice.** It is further

**ORDERED** that Mr. Sgaggio's fourth claim is **DISMISSED without prejudice.** [7] It is further

**ORDERED** that this case is closed.

DATED September 18, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[7] Under Colo. Rev. Stat. § 13-80-111, if claims are properly commenced within the statute of limitations and involuntarily dismissed because of lack of jurisdiction, the plaintiff "may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later." *See also Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).